Filed 8/5/24  In re V.R. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re V.R., a Person Coming Under the Juvenile Court Law. | B321166 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff,<br><br>    v.<br><br>S.C.,<br><br>    Defendant and Appellant;<br><br>R.R.,<br><br>    Defendant and Respondent. | Los Angeles County<br>Super. Ct. No. CK72824D |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge. Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Respondent.

No appearance by the Department of Children and Family Services.

## INTRODUCTION

S.C. (mother) appeals from an order terminating dependency jurisdiction over her daughter V.R. (the minor) and awarding sole legal and physical custody to the minor's father, R.R. (father). (Welf. & Inst. Code, § 362.4.)[1] Mother claims the court abused its discretion in awarding father sole legal custody of the minor. We disagree and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Petitions Concerning the Minor's Half Siblings

In 2008, a court sustained a petition under section 300 alleging that mother had a history of engaging in violent altercations in one of the minor's half sibling's presence, placing her and mother's other child at risk of physical and emotional harm. The two children were placed in the home of the maternal grandparents. Mother was permitted to live in the same home and the children remained under the supervision of the Department of Children and Family Services (Department).

In January 2010, the Department filed another petition on behalf of mother's two children, alleging that mother had a

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

history of illicit drug abuse including methamphetamine, was a current user of marijuana, and had been under the influence of drugs while the children were in her care. The Department also filed a petition on behalf of mother's third child in connection with mother's drug use. The three children (the minor's half siblings) were detained.

In October 2010, a court found that mother was not in compliance with the case plan and terminated family reunification services. The minor's half siblings were placed with the maternal grandmother. In 2012, the maternal grandmother became the legal guardian of the minor's half siblings.

## 2.	The 2012 Petition and Related Proceedings

In May 2012, the Department received a referral alleging that a domestic violence dispute had taken place between mother and father. Mother called the maternal grandmother and asked her to pick mother up. When the maternal grandmother arrived, mother ran outside carrying the minor (an infant) and was bruised and crying. The police arrived, but mother refused to file a report.

The maternal grandmother told a social worker that father had threatened mother that if she ever involved the Department with the minor or ever left him or took the minor from him, he would shoot the maternal grandmother, the minor's half siblings, and mother. Mother denied that she had called the maternal grandmother and that there was any domestic violence between her and father but admitted that she and father had argued. Father also admitted that they had argued but denied any violence.

The court authorized a removal order and the minor was detained. The Department filed a petition alleging that mother

3

and father have a history of engaging in violent altercations in the minor's presence and endangering the minor and her half siblings, and that father has a history of substance abuse and is a current abuser of marijuana. (§ 300, subds. (a), (b), (j).)

At the detention hearing, the court found that a prima facie case for detaining the minor had been established. The court ordered the Department to provide mother and father with family reunification services and ordered monitored visits. At the jurisdiction hearing, mother and father pleaded no contest to the amended petition that omitted the allegations under section 300, subdivisions (a) and (j). At the disposition hearing, the court found by clear and convincing evidence that a substantial danger to the minor existed and there were no reasonable means to protect her without removal from the parents' custody. The court ordered family reunification services for father only, noting that section 361.5, subdivision (b)(10) applied to mother.[2] The court also ordered visitation for both parents.

In November 2012, the minor was placed with the maternal grandmother.

In the six-month status report, the Department stated that father had completed a parenting course and participated in

_____

[2] This subdivision states that reunification services need not be provided when the court finds, by clear and convincing evidence, "[t]hat the court ordered termination of reunification services for any siblings or half-siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 … and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian." (§ 361.5, subd. (b)(10)(A).)

individual counseling. Father was also participating in couple's counseling and a six-month anger management class. The Department stated that father was in compliance with the court ordered programs and recommended that family reunification services continue and that the court calendar a supplemental progress report in three months to address father's progress and the possible return of the minor to father.[3] The court adopted this recommendation.

In a progress report, the Department stated that father maintained a consistent visitation schedule with the minor and completed all court-ordered counseling, classes, and drug testing. Father reported being ready to have the minor returned to his custody. Mother and father were no longer living together. The Department recommended that the minor be released to father and receive family maintenance services and the court so ordered. The court also ordered continued monitored visits for mother and that father could not supervise the visits, nor could mother reside with father.

In a status report, the Department stated the minor was doing well with father. Mother's visits with the minor were inconsistent. Between March and May 2013, mother had regular visits with the minor at the maternal grandmother's home. In May, mother reported that she and the maternal grandmother were no longer on speaking terms. As of the date of the Department's report, mother had not visited the minor for two

---

[3] The status report attached certificates reflecting mother's participation in individual counseling and completion of parenting and domestic violence classes. It also attached the results of 13 drug tests taken by mother, of which one was positive for methamphetamine.

months. The Department recommended that the court terminate jurisdiction and award sole legal and physical custody of the minor to father, and that mother be allowed monitored visitation.

In September 2013, the court awarded custody of the minor to the father and ordered supervised visitation for mother.

### 3. The 2014 Petition and Related Proceedings

In August 2014, the Department received a referral alleging that mother and father had participated in two armed robberies and that the minor was present at the first of these. Mother and father were arrested in connection with the robberies. The minor was initially released into the care of the paternal grandmother but was placed with the maternal grandmother in September 2014.

Mother told the Department that she and father had decided to take the minor to the beach and some neighborhood kids tagged along. She stated she was unaware that the kids were committing robberies. Mother also admitted that her visits with the minor were supposed to be monitored by the paternal grandmother but sometimes only father monitored her visits, and that she sometimes stayed over at the paternal grandmother's home.

In September 2014, the Department filed a section 300 petition alleging that mother and father failed to protect the minor because they committed robberies while the minor was under their care and supervision and because father had a history of illicit drug use and was a current user of marijuana. (§ 300, subd. (b).)

At the detention hearing, the court found that a prima facie case for detaining the minor had been established. The court

ordered the Department to provide family reunification services and monitored visits for both parents.

In the jurisdiction/disposition report, the Department stated that mother continued to deny being involved in the robberies but acknowledged the minor was present that day. Mother also denied that she or father used drugs. She stated that father had a marijuana card but would not smoke around the minor and that she did not observe him under the influence. Mother also admitted she had been living with father. Father denied the robberies and denied the minor was present. He admitted to smoking marijuana twice a day but denied using drugs around the minor.

In December 2014, the court sustained the petition. The court ordered family reunification services and monitored visitation for the parents, including during their incarceration.[4]

In the six-month status review report, the Department reported that both parents had been convicted of second degree robbery and sentenced to three years in prison. Mother had completed parenting classes, domestic violence classes, and anger management classes at her incarceration facility and had completed a few visitations with the minor. Father had not completed any classes and was not in compliance. At the six-month review hearing, the court ordered further family reunification services.

The 12-month status review report stated mother was in partial compliance and father was not in compliance. The minor was doing well in the maternal grandmother's care and got along

_____

[4] Father appealed these findings and orders, which were affirmed on appeal. (*In re V.R.* (Aug. 11, 2015, B260998) [nonpub. opn.].)

well with her half siblings. The maternal grandmother informed the Department that she took the minor to visit mother at the detention center several times and that mother consistently called and wrote to the minor. Father did not call or write to the minor. In January 2016, the court found that continued jurisdiction was necessary, that mother was in compliance with the case plan, and that father was not in compliance with the case plan. The court ordered further family reunification services.

In the 18-month status review report, the Department recommended that the court terminate family reunification services for mother and father. In June 2016, the court conducted a contested hearing as to father and terminated his family reunification services. The court continued the hearing as to mother to allow for her transportation to the court. In a last minute information to the court, the Department stated that mother did not intend to appear at the hearing and recommended again that the court terminate family reunification services for mother. In August 2016, the court terminated family reunification services for mother and ordered a section 366.26 hearing.[5]

In the section 366.26 report, the Department stated that the maternal grandmother had been the minor's primary caretaker since she was six months old and was committed to keeping the minor and her half siblings together. The

---

[5] Mother filed a notice of intent to file writ petition that day stating that she intended to challenge the findings and orders made by the court. The writ was deemed non-operative. (*S.C. v. Superior Court* (B277150, Oct. 13, 2016).)

Department recommended that jurisdiction be terminated and that the maternal grandmother be granted legal guardianship.

In April 2017, the court appointed the maternal grandmother as the minor's legal guardian and terminated dependency jurisdiction over the minor.

**4.      Section 388 Petitions**

In November 2018, mother filed a section 388 petition requesting that she be granted custody of the minor. The request was denied because it did not state any new evidence or show a change of circumstances.

In July 2019, father filed a section 388 petition asking for the minor to be placed in his custody. Father stated he was on a "straight road," had a job and housing, and would be able to put the minor in a better school. He also stated the minor wanted to be with him. The court ordered a hearing and directed the Department to prepare a report. In its response to the section 388 petition, the Department reported that father had yet to complete either the courses previously ordered by the court or random drug and alcohol testing. He was unemployed, was a current marijuana user, and had been inconsistent in his visits with the minor. The Department recommended that no family reunification services be provided and that the petition be denied. In October 2019, the court denied father's petition.

Father filed another section 388 petition in February 2020. Father stated that he had maintained a job, had a stable home, had completed job training, parenting, and substance abuse courses, and had participated in counseling. Father also claimed that mother and the maternal grandmother had kept him from seeing the minor and that the minor told him concerning things about her home life and the maternal grandmother during their

9

visits. Further, according to father, mother vandalized his home and stabbed him in March 2018. He asked that his claims against the maternal grandmother be investigated, that the minor be removed from the maternal grandmother, and that he be awarded sole custody. His petition attached proof of enrollment and attendance for individual counseling, certificates of completion for the courses, and proof of enrollment in truck driving school. The court ordered a hearing and asked the Department to prepare another report. The hearing was continued due to Covid-19. In the meantime, father filed a third section 388 petition. The court ordered another hearing and asked the Department to prepare a report.

In its response to the third section 388 petition, the Department stated father maintained a suitable residence, had maintained employment prior to Covid-19, and had the support of his fiancée and extended family. Father reported that he had not spoken with mother since she stabbed him two years earlier, a crime for which she went to prison.[6] Father stated that mother had married and he did not know where she was. The

---

[6] Because the Department's report only contained a current criminal history for father, not for mother, father's statements in his section 388 petition and to a social worker are the only evidence that mother stabbed him. However, the record supports that mother was incarcerated in September 2019, as the court issued an "Order for Prisoner's Appearance at Hearing Affecting Parental Rights" for mother to attend the hearing on father's first section 388 petition. The Department's response to father's first section 388 petition, filed October 2, 2019, also identified mother's address as a correctional facility. The Department reported mother's address as unknown in its response to father's third section 388 petition, filed October 8, 2020, suggesting that mother was no longer incarcerated by that time.

Department recommended that father's petition be granted, that jurisdiction be reinstated, and that father be offered family reunification services and be ordered to participate in random drug and alcohol testing and a 12-step program. The court adopted these recommendations.

In a status report dated March 2021, the Department stated that father had three unexcused "no shows" as well as two positive results from drug testing. The report also stated that the minor had expressed a desire to remain with the maternal grandmother because she wanted to remain close to her half siblings and to be able to continue having visits with mother. The Department recommended that family reunification services be terminated.

In April 2021, mother filed a section 388 petition asking the court to modify the 2017 order granting maternal grandmother guardianship of the minor. Mother stated that she had completed domestic violence group counseling, parenting classes, Alcoholics Anonymous/Narcotics Anonymous (AA/NA), and that she was participating in individual counseling. She attached certificates of completion for the courses and counseling. Mother asked the court to terminate the legal guardianship and return the minor to her, reinstate her reunification services, and/or grant her unmonitored visits. Mother stated the requested actions would benefit the minor because the minor needs her mother in her life and because mother had "made positive changes in [her] life, [was] ready to be the positive role model that [the minor] needs, and [was] able to provide her with a safe, stable, and healthy environment." The court denied mother's section 388 petition without a hearing.

Several days later, the Department filed a last minute information for the court following a child abuse and neglect allegation from father. According to father, the maternal grandmother allowed mother to enter the home and take the minor whenever she wanted, without supervision. The Department reported that the maternal grandmother had expressed feeling exhausted due to the demands of the Department and felt she was being treated "like a criminal." Several times, she stated that she was done being a legal guardian, but then recanted. The maternal grandmother stated that she wished for circumstances to return to normal. According to the maternal grandmother, mother and father are not good people, do not deserve to reunify with the minor, and simply view her as a trophy. The maternal grandmother stated that mother and father fight over who gets more visits, which results in mother getting upset and taking the minor with her. Mother called the maternal grandmother names, such as "fucking bitch," and entered the home whenever she wanted.

The maternal grandmother reported that, on March 21, 2021, mother took the minor for over four hours and brought her home late, and that on March 24, 2021, mother took the minor at noon and returned after 9:00 p.m. The maternal grandmother did not consent but could not stop mother because she was afraid of mother's abuse. The maternal grandmother stated that mother cursed at her, told her " 'shut the fuck up mother fucken [*sic*] bitch,' " pushed her, threw her into a door, and stormed inside her house. The Department advised the maternal grandmother to call the police when this happens, but the maternal grandmother reported the police would not do anything because she no longer had her guardianship documents.

On April 28, 2021, mother filed another section 388 petition, this time seeking modification of the order dated April 5, 2021, denying her previous section 388 petition without a hearing. The petition stated that mother had completed courses and that unspecified allegations against her were not true. Mother asked for custody and unmonitored visits. Mother stated she had proof that the requested actions would benefit the minor but did not identify any such proof. The court denied the petition without a hearing.

Mother appealed the order denying her second section 388 petition without a hearing. We affirmed the order. (*In re V.R.* (Dec. 6, 2022, B312319) [nonpub. opn.].)

## 5. Subsequent Proceedings

### 5.1. Permanency Planning, Section 388 Petitions

In June 2021, the court held a contested permanency planning review hearing. The court found that father's compliance with the case plan was substantial and that returning the minor to his care and custody would not create a substantial risk to her safety and well-being. Accordingly, the court terminated the suitable placement order and ordered the minor placed in father's custody with family maintenance services.

Father immediately filed a section 388 petition seeking to terminate the maternal grandmother's legal guardianship of the minor. The court granted the petition.

Mother also filed a section 388 petition requesting "to be heard" regarding the court's decision to place the minor with father. The court summarily denied mother's petition because it did not state any change of circumstance, nor did it attach

13

evidence supporting mother's statement that she had been attending counseling and parenting classes.

### 5.2. December 2021 Progress Hearing

The Department submitted a status review report in late November 2021. During the preceding months, father had secured employment and stable housing. Further, father's family (his wife, his wife's mother, and the paternal grandparents) provided extensive support for both father and the minor. Father expressed frustration, however, at being forced to facilitate the minor's visitation with mother, given that the minor did not want to visit with her.

As to mother, the Department observed that she was focused on visiting with the minor and expressed the desire to reunify with her. Yet, mother refused to verify her compliance with recommended services and was evasive in her responses to the Department's social workers. The Department advised mother to attend a high-conflict co-parenting program to aid with future custody issues and to seek a modification of the criminal protective order to allow for peaceful contact with father regarding the minor. There is no indication mother took any action, however.

Finally, the Department reported that the minor appeared to be doing well in father's custody. The minor said she was happy and comfortable in father's home and felt loved by her family. The minor reported feeling scared of mother and her new partner and generally refused to visit with mother during her scheduled visitation times. During the preceding months, the minor only visited with mother briefly on two occasions with a monitor.

In a last minute information in mid-December 2021, the Department reported the minor was still refusing to engage in monitored visits with mother. Three attempted visits had occurred. At the first visit, the minor said she did not want to visit with mother. They visited very briefly. On a second occasion, mother and the minor again visited only briefly. Mother pushed the minor to explain why she did not want to visit. When the minor became emotional and appeared worried, the monitor ended the visit. At the third visit, the minor said she did not want to visit with mother but did interact with mother for some time, discussing various subjects. The minor became agitated, however, and the visit concluded. The Department recommended that mother's visitation schedule (then nine hours per week) be reduced. The Department recommended continued family maintenance services.

On December 16, 2021, the court held a review hearing under section 364. The court found continuing jurisdiction was necessary, ordered the parents to attend a high-conflict co-parenting program, and ordered the Department to assist mother in visiting the minor.

### 5.3.  March 2022 Progress Hearing, Case Closure

In a last minute information for the court, the Department reported that father had enrolled in and was attending a high-conflict co-parenting class and was participating in conjoint therapy sessions with the minor. Mother, by contrast, had not enrolled in any classes or other services, was not drug testing as required, and had refused to meet with the Department social worker. Father expressed frustration that mother was still demanding to visit with the minor and that mother had gone to the minor's school and removed father's wife from the child's

school profile. When questioned, mother said she was afraid of going back to prison and had opted not to request visits with the minor and not to participate in court-ordered programs "because she does not want drama in her life, return to prison, nor have problems with the law as far as getting accused of things she has not done." "Per mother, she has stopped requesting visits to avoid the drama with the father and his retaliation."

The Department observed that "there is a lot of hatred and animosity issues between bio-mother and bio-father that have not been resolved. It is clear that mother and father are unable to separate the negative past behaviors in the relationship and co-parent." Conflict issues continued to arise, despite father's completion of the high-conflict co-parenting class. The Department recommended that the court terminate family maintenance services and terminate dependency jurisdiction. The Department further recommended that father be granted sole physical custody of the minor and that the parents share legal custody of her, with monitored visitation for mother.

At the hearing on March 17, 2022, minor's counsel requested that the court close the dependency case in light of mother's refusal to meet with the Department's social workers and her decision to forgo visitation with the minor. Father joined in that request. The Department recommended that the court terminate jurisdiction, noting co-parenting and custody issues would be better addressed in the family law court. The Department also stated that although there was some evidence father and his family were somewhat alienating mother, it had no concerns about the minor's safety in father's custody. It therefore recommended that the court order sole physical custody with father and joint legal custody. Mother's counsel requested

16

that the court continue jurisdiction and facilitate mother's visitation with the minor in a therapeutic setting.

The court found dependency jurisdiction was no longer necessary and terminated jurisdiction, ordering sole legal and physical custody to father. The court noted that mother had limited contact with the Department and had not progressed beyond monitored visitation. The court stayed the order and directed counsel to prepare the necessary exit orders. The court ordered mediation regarding the terms of the custody order.

The court entered the final parentage and custody orders on April 21, 2022. Pursuant to mediation, father and mother agreed to a parenting plan with custody and visitation schedules, including monitored visitation for mother at the minor's option.

Mother timely appeals.

## DISCUSSION

Mother does not challenge the termination of dependency jurisdiction, the award of sole physical custody of the minor to father, or the requirement that her visitation with the minor be monitored. Indeed, mother only challenges the court's order to the extent it awards sole, rather than joint, legal custody of the minor to father. We conclude the court did not err.

Our colleagues in Division Four of this court recently summarized the applicable law. "Section 362.4 governs the termination of juvenile court jurisdiction and related orders. The statute authorizes a juvenile court to make 'exit orders' regarding custody and visitation upon terminating dependency jurisdiction over a child. (§ 362.4, subd. (a); *In re Chantal S.* (1996) 13 Cal.4th 196, 203; *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358.) These exit orders remain in effect until modified or

17

terminated by a subsequent order of the superior court. (§ 362.4, subd. (b); see also Cal. Rules of Court, rule 5.700.)

" '[I]n making exit orders, the juvenile court must look at the best interests of the child.' (*In re John W.* (1996) 41 Cal.App.4th 961, 973; see also *In re T.S.* (2020) 52 Cal.App.5th 503, 513 (*T.S.*) ['When making a custody determination under section 362.4, "the court's focus and primary consideration must always be the best interests of the child." '], quoting *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268 (*Nicholas H.*).) The court must be guided by the totality of the circumstances and issue orders that are in the child's best interests. (*In re Chantal S.*, *supra*, 13 Cal.4th at p. 201; *In re Roger S.* (1992) 4 Cal.App.4th 25, 30–31.) Because juvenile dependency proceedings arise when children are subject to or at risk of abuse or neglect, '[t]he presumption of parental fitness that underlies custody law in the family court just does not apply. … Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.' (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712, (*Jennifer R.*); accord *Chantal S., supra*, 13 Cal.4th at p. 206.)

" '[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).' (*Nicholas H., supra*, 112 Cal.App.4th at p. 265, fn. 4.) We review the juvenile court's exit orders for an abuse of that discretion. (See, e.g., *In re Maya L.* (2014) 232 Cal.App.4th 81, 102; *Jennifer R., supra*, 14 Cal.App.4th at p. 711; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) We will not disturb the juvenile court's decision ' " 'unless the trial

18

court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.)" (*In re J.M.* (2023) 89 Cal.App.5th 95, 112–113.)

Considering the evidence before the court, the court did not abuse its discretion by determining that sole legal custody with father was in the minor's best interest. First, the court found that mother had not made any significant progress in the court-ordered services. Specifically, although mother was focused on visiting with the minor and expressed the desire to reunify with her, mother refused to verify her compliance with recommended and court-ordered services and was evasive in her responses to the Department's social workers. The Department advised, and the court subsequently ordered, that mother attend a high-conflict co-parenting program to aid with future custody issues. Mother did not enroll in any classes or other services, was not drug testing as required, and refused to meet with the Department social worker. These facts support the juvenile court's decision not to grant joint legal custody. (See *In re Maya L.* (2014) 232 Cal.App.4th 81, 103 [affirming sole legal custody to father where mother was uncooperative with the Department]; *In re Jennifer R., supra,* 14 Cal.App.4th at p. 713 [affirming sole legal custody with father where mother "did not follow through on [program] referrals" and "fail[ed] to make progress in overcoming the problems leading to [the child's] removal"].)

Additionally, the record indicates that the minor was doing well in father's care. The minor said she was happy and comfortable in father's home and felt loved by her family. Father had secured employment and stable housing and his family (his

19

wife, his wife's mother, and the paternal grandparents) provided extensive support for both father and the minor. And father took seriously the recommendations of the Department and the orders of the court. He enrolled in and was attending a high-conflict co-parenting class and was participating in conjoint therapy with the minor. Indeed, after the minor was placed in father's home, the Department consistently observed the minor to be happy and well cared for and saw no reason for concern over her safety and well-being. (See *In re Maya L.*, *supra*, 232 Cal.App.4th at p. 103 [affirming sole legal custody with father based on "overwhelming evidence that father provided excellent care for [child]" and the Department "consistently reported it had no concerns regarding father's ability to care for the child"].) This additional evidence also supports the court's finding that sole legal custody with father was in the minor's best interest.

It is also relevant that, during the final period of the Department's supervision, mother stopped requesting the opportunity to visit with the minor. Mother expressed concern about the high level of conflict with father (her refusal to participate in a high-conflict co-parenting class notwithstanding), said she was afraid of going back to prison, and opted not to request visits with the minor and not to participate in court-ordered programs "because she does not want drama in her life, return to prison, nor have problems with the law as far as getting accused of things she has not done." This additional evidence also supports the court's decision to award father sole legal custody of the minor.

Mother argues that the court erred by ignoring the Department's recommendation to grant joint legal custody. She seems to suggest that in the absence of joint legal custody, she

20

may be unable to visit with the minor or obtain information about the minor directly from the minor's school. But the terms of mother's visitation are set forth in the custody and visitation order and mother may request the family court's assistance in enforcing her visitation rights irrespective of her custody rights. Additionally, mother fails to explain why it would be in the minor's best interest for mother to retain educational rights, especially in light of mother's failure to pursue visitation with the minor during the final months of the Department's supervision.

Finally, mother cites *In re Roger S.* (1992) 4 Cal.App.4th 25, as persuasive authority. The case is inapposite, however, as it involved a juvenile court's refusal to accept evidence from a parent in connection with the hearing on final custody and visitation orders. (*Id.* at pp. 30–31.) The Court of Appeal held that the court erred by failing to consider evidence relevant to the best interest of the child. (*Id.* at p. 31.) Here, no such concern is present as mother did not offer, and thus the court did not refuse, any evidence at the hearing.

In sum, ample evidence supports the court's determination that the minor's best interest is served by father's sole legal custody. Mother presents no persuasive evidence or argument to the contrary.

## DISPOSITION

The order is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.